**EX PARTE Eric Michael HEILMAN, Appellee**

**NO. PD–1591–13**

Court of Criminal Appeals of Texas.

DELIVERED: March 18, 2015

Stanley G. Schneider, Schneider & McKinney, P.C., Houston, for Eric Michael Heilman.

John R. Messinger, Assistant State Prosecuting Attorney, Lisa C. McMinn, State's Attorney, Austin, for State of Texas.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, RICHARDSON, YEARY, and NEWELL, JJ., joined.

Eric Heilman pleaded guilty to misdemeanor tampering with a governmental record after the relevant two-year statute of limitations had expired. In return for Heilman's plea, the State agreed not to pursue indictment for state-jail felony tampering with a governmental record. In an application for a writ of habeas corpus, Heilman challenged the trial court's jurisdiction to accept his plea to the time-barred offense, arguing that his "pure law" limitations defense is a category-one abso-

lute right under *Marin v. State*.[1] The habeas court granted relief, and the court of appeals affirmed. We hold that the right at issue is a category-three forfeitable right and reverse the judgment of the court of appeals.

## I. Facts and Procedural History

In October 2008, Heilman was serving as an officer with the Beaumont Police Department. Along with another officer and a confidential informant, Heilman took part in a failed undercover narcotics sting targeting a suspected drug dealer. Although no transaction occurred, when the suspect began to leave, Heilman pursued and arrested him, seizing cash and a large amount of cocaine. But when Heilman drafted his probable-cause affidavit on October 13, 2008, he failed to mention either the undercover operation or his confidential informant.

When that affidavit's veracity was later challenged, a district attorney pro tem began a grand-jury investigation of Heilman. During the entire investigation, no indictment, information, or criminal complaint was ever filed against Heilman. Nevertheless, on December 22, 2010, Heilman pleaded guilty on a misdemeanor information of tampering with a governmental record in return for the State agreeing to (1) forgo indictment on the state-jail felony offense and (2) not oppose early termination of his one-year deferred-adjudication sentence after six months. Because Heilman's offense of tampering with a governmental record—a Class A misdemeanor—carried only a two-year statute of limitations,[2] Heilman also signed a written waiver stating: "I hereby waive all statute of limitations." Heilman also signed a Deferred Adjudication Order stating: "DEFENSE WAIVES STATUTE LIMITATIONS PER JUDGE FLORES." On June 24, 2011, after the agreed-upon six months, the trial court terminated Heilman's deferred adjudication and dismissed the information.

Heilman subsequently filed an application for a writ of habeas corpus, citing as a collateral consequence his inability to obtain a peace officer's license and alleging an involuntary plea and ineffective assistance of counsel. He also sought findings of fact and conclusions of law that the original trial court lacked jurisdiction under *Phillips v. State*[3] both to accept his December 2010 plea and to sentence him to deferred adjudication after the two-year statute of limitations' expiration in October 2010. The habeas judge vacated the trial court's proceedings against Heilman, concluding it lacked jurisdiction. The court of appeals affirmed, holding that the "charging instrument on its face established that the statute of limitations prohibited the State from prosecuting the defendant."[4]

## II. Analysis

The circumstances of this case force us to reconsider the nature of a statute-of-limitations defense and exactly what right it protects. And although "[o]ften it is better to be consistent than right," we overrule precedent when the reasons for doing so are "weighty enough," including when the precedent was "flawed from the outset" and produces "unjust" results "that place unnecessary burdens on the sys-

---

**1.** 851 S.W.2d 275, 279 (Tex.Crim.App.1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997).

**2.** *See* Tex.Code Crim Proc. Ann. art. 12.02(a) (West 2012).

**3.** 362 S.W.3d 606 (Tex.Crim.App.2011).

**4.** *State v. Heilman*, 413 S.W.3d 503, 505–508 (Tex.App.–Beaumont 2013) (citing *Phillips*, 362 S.W.3d at 617–18).

tem."[5] Heilman's reliance on *Phillips v. State* presents us with such a situation.

## A. *Marin*'s Three Categories

In *Marin v. State*, we constructed a three-part framework to categorize the rights of our criminal-justice system:

1. "absolute requirements and prohibitions";

2. "rights of litigants which must be implemented by the system unless expressly waived"; and

3. "rights of litigants which are to be implemented upon request."[6]

We explained that category-one rights "are to be observed even without partisan request" and cannot "lawfully be avoided even with partisan consent."[7] Category-two rights, however, can be waived by right, but a litigant "is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record."[8] Finally, a category-three right can be forfeited by a litigant "for failure to insist upon it by objection, request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to the system's impartial representative, usually the trial judge."[9]

## B. *Phillips v. State*'s distinction between factual and pure-law limitations defenses

Under *Proctor v. State*, we originally held that a statute-of-limitations defense "is forfeited if not asserted at or before the guilt/innocence stage of trial," thereby placing it in *Marin*'s third category.[10] Yet more recently in *Phillips v. State*, we distinguished between two types of limitations defenses: (1) those that are "based on facts" and (2) those that are "pure law."[11] Whereas the first type merely "gives rise to a limitations factual defense" because it requires factual development beyond the charging instrument, the second appears on the face of the instrument and therefore "gives rise to a statute-of-limitations bar" that constitutes a jurisdictional defect.[12] We held that, while *Proctor*—and therefore *Marin*'s third category—continued to apply to factual limitations defenses, it did not apply to those that are pure law.[13] Therefore, a defendant could forfeit only a factual limitations defense by failing to assert it at trial.[14] But a pure-law limitations defense, as a jurisdictional defect, could not be forfeited and could be raised for the first time on appeal or in a collateral proceeding.[15]

## C. Bases of *Phillips*'s distinction

In making that distinction, we relied primarily on the constitutional prohibitions against *ex post facto* laws—found in both the federal and Texas constitutions[16]—and

5. *See Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex.Crim.App.2007).

6. *Marin*, 851 S.W.2d at 279.

7. *Id.* at 280.

8. *Id.*

9. *Id.* at 279.

10. *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex.Crim.App.1998).

11. *Phillips*, 362 S.W.3d at 617.

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. U.S. CONST. art. I, § 10 cl. 1 ("No state shall ... pass any ... *ex post facto* Law."); TEX. CONST. art. I, § 16 ("No ... *ex post facto* law ... shall be made.").

our reasoning in *Ieppert v. State*.[17] In that case, we clarified that the prohibition against *ex post facto* laws is not actually an individual right, but instead "a categorical prohibition directed by the people to their government" that cannot be waived "either individually or collectively."[18] Citing that language, we held in *Phillips* that the "right to be free from *ex post facto* laws or the *ex post facto* application of a law" is a *Marin* category-one absolute right.[19]

Our analysis in *Phillips* then cited the Supreme Court's *Stogner v. California*[20] decision to resolve the collision between the constitutional *ex post facto* prohibition (a category-one absolute right under *Ieppert*) and a statute-of-limitations defense (originally a category-three forfeitable right under *Proctor*).[21] In *Stogner*, the Supreme Court held that a state statute allowing time-barred prosecutions for sex-related child abuse if "begun within one year of the victim's report" violated the *Ex Post Facto* Clause.[22] We noted the Supreme Court's invocation of the assurances the State provides through a statute of limitations; namely that one "has become safe from its pursuit," and that the State will "play by its own rules" and give "fair warning" to preserve exculpatory evidence.[23] Citing those assurances, we held in *Phillips* that a "facially retroactive law

that revived a previously time-barred offense violated the *Ex Post Facto* Clause," thus making a pure-law limitations defense a category-one right through application of the *Ex Post Facto* Clause.[24] Therefore, once the statute of limitations on Phillips's offenses expired, "from that day forward, prosecution of all twelve counts was forever and absolutely barred."[25]

### D. Our decision to overrule *Phillips v. State*

■ We now conclude that *Phillips*'s distinction between factual and pure-law limitations defenses was in error, at least in circumstances lacking any legislative *ex post facto* violation. Only the legislature can violate either the federal or state *Ex Post Facto* Clause because—as we held in *Ortiz v. State* and now reaffirm—both are "directed at the Legislature, not the courts."[26] Indeed, as the seminal case on the *Ex Post Facto* Clause—*Calder v. Bull*—declared, the "plain and obvious meaning and intention of the prohibition" is that "the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it."[27]

Our *Ortiz* holding also sought to limit the effect of *Ieppert*, the case on which so

---

17. 908 S.W.2d 217 (Tex.Crim.App.1995).

18. *Id.* at 220.

19. *Phillips*, 362 S.W.3d at 611–12.

20. 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003).

21. *Phillips*, 362 S.W.3d at 614.

22. *Stogner*, 539 U.S. at 609, 123 S.Ct. 2446 (citing Cal.Penal Code Ann. § 803(g) (West Supp.2003)).

23. *Phillips*, 362 S.W.3d at 614 (citing *Stogner*, 539 U.S. at 611, 123 S.Ct. 2446).

24. *See id.*

25. *Id.* at 616.

26. *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex.Crim. App.2002). *See also Phillips*, 362 S.W.3d at 619 (Keller, P.J., dissenting).

27. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). *See also Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.") (citations omitted).

much of *Phillips*'s reasoning relied. We explained that in *Ieppert* "we did not appear to appreciate the distinction" between the legislature and the courts due to *Bouie v. City of Columbia*'s due process prohibition against the judiciary "achieving, through construction of a statute, the exact same consequence that would be prohibited by the *ex post facto* clause if the Legislature had so acted." [28] We noted that the Supreme Court in *Rogers v. Tennessee* had since declared that reasoning dicta—clarifying that *Bouie* turned only on a due process violation—and held the federal *Ex Post Facto* Clause inapplicable to the courts, citing the "important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other." [29]

In concluding its analysis in *Stogner*, the Supreme Court struck down California's statute because it "retroactively withdraws a complete defense to prosecution after it has already attached, and it does so in a manner that allows the State to withdraw this defense at will and with respect to individuals already identified." [30] But here, the State could not pursue the time-barred offense "at will." There was no statute like California's enabling it to do so. Because there was no legislative act, there was no *ex post facto* violation. [31] And although *Stogner* clarified the nature of a statute-of-limitations defense operating in conjunction with a violation of the *Ex Post Facto* Clause, it provided no guidance as to whether a statute-of-limitations defense standing alone must be forfeitable, waivable, or absolute that would direct our *Marin* analysis and require us to stray from *Proctor*.

But we need not hold that the legislature acting only by and through itself can violate the *Ex Post Facto* Clause. [32] In *Peugh v. United States*, a recent Supreme Court decision that we did not have the benefit of reviewing when we decided *Phillips*, the Court held that a trial judge's application of the Federal Sentencing Guidelines in effect at the time of a defendant's trial instead of those in effect at the time of the defendant's offenses violated the *Ex Post Facto* Clause. [33] In rejecting the government's argument that the guidelines were just one among a number of sources that a district court could use during sentencing, no different than a "policy paper," the Supreme Court noted the statutory consequences from either following or deviating from the guidelines. [34] A district court had to consult the guidelines to avoid "reversible procedural error" and risked an abuse-of-discretion finding on appeal if it deviated too far. [35] But if a district court followed the guidelines, a

---

**28.** *Ortiz*, 93 S.W.3d at 91 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)).

**29.** *Id.* (citing *Rogers v. Tennessee*, 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)).

**30.** *Stogner*, 539 U.S. at 632, 123 S.Ct. 2446.

**31.** *Ortiz*, 93 S.W.3d at 91. *See also Phillips*, 362 S.W.3d at 624 (Keller, P.J., dissenting) ("[T]he savings provision prevented the 1997 amendments from applying to appellant's sex offenses that became barred in 1993. The parties and the trial court were simply mis-

taken in believing that the 1997 statute applied. The legislature did not pass an *ex post facto* law.").

**32.** *See, e.g., Peugh v. United States*, —— U.S. ——, 133 S.Ct. 2072, 2085, 186 L.Ed.2d 84 (2013) (plurality stating that "the coverage of the *Ex Post Facto* Clause is not limited to legislative acts").

**33.** *Id.* at 2088.

**34.** *Id.* at 2087 (referencing various provisions of 18 U.S.C. § 3553).

**35.** *Id.*

court of appeals could presume the sentence reasonable.[36] The Court also cited *Garner v. Jones*, which recognized that a state parole board could—but refused to find that it did—violate the *Ex Post Facto* Clause by changing its rules.[37]

But at no point in *Peugh* did the Supreme Court overturn—or even reference—its earlier refusal to extend the scope of the *Ex Post Facto* Clause to the courts in *Rogers v. Tennessee*, which solidifies our holding that, while the clause's scope can extend to executive agencies exercising delegated legislative power, it still does not extend to courts exercising their inherent power to accept a plea bargain.[38] Thus the Supreme Court's reasoning in *Peugh* reaffirms our holding in *Ortiz* that the *Ex Post Facto* Clause is "directed at the Legislature, not the courts." [39]

 Therefore, in assessing a claim based on the *Ex Post Facto* Clause, we look beyond the actor that is directly committing the alleged violation for some legislative origin of the alleged violation—such as the enabling statutes of either the United States Sentencing Commission in *Peugh* [40] or the state parole board in *Garner*.[41] A legislature cannot escape the strictures of either the Texas or federal *Ex Post Facto* Clause by mere delegation. But a defendant must be able to point to a

legislative origin of the alleged violation, and here there was none. Instead, the trial judge's acceptance of Heilman's time-barred plea originated from Heilman's plea negotiations with the State, along with his multiple waivers of any limitations defense.

And for Heilman's plea agreement to stand, we must first overturn *Phillips v. State*. In *Phillips*, we reasoned that once the charging instrument showed that the statute of limitations on the twelve counts of sexual offenses leveled against Phillips had expired, "from that day forward, prosecution of all twelve counts was forever and absolutely barred." [42] *Phillips*'s reliance on a legally significant distinction between pure-law and factual limitations defenses determined that result and caused us to stray from *Proctor*.[43] It was not dicta.[44] It was an analytical step to reach the result. Therefore, because the information against Heilman showed that the statute of limitations on the misdemeanor offense to which he pleaded had run two months before his plea, prosecution on that offense was already "forever and absolutely barred" under *Phillips*.[45]

Although prosecution of the state-jail felony offense would still have been possible at that point, under *Phillips* that would not have revived prosecution of the misdemeanor offense. When we analyze rights

---

36. *Id.*

37. *Id.* at 2085 (citing *Garner v. Jones* 529 U.S. 244, 247, 257, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)).

38. *See Rogers*, 532 U.S. at 460, 121 S.Ct. 1693 ("The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text. It would also evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.").

39. *See Ortiz*, 93 S.W.3d at 91.

40. *See Peugh*, 133 S.Ct. at 2079.

41. *See Garner*, 529 U.S. at 247, 120 S.Ct. 1362.

42. *Phillips*, 362 S.W.3d at 616.

43. *Id.* at 617–18.

44. *Cf. post*, op. at 180–81 (Alcala, J., dissenting).

45. *See Phillips*, 362 S.W.3d at 616–17.

under our *Marin* framework, we focus on the nature of the right at issue—not the circumstances under which it was raised.[46] Therefore, our analysis here must turn on the nature of the statute-of-limitations defense itself, not on the claim that in hindsight the record just happens to show that a hypothetical prosecutor in these particular circumstances could have charged Heilman with the non-barred state-jail felony offense at the time of his plea. It would be easy to misinterpret a statute-of-limitations defense as a uniquely fundamental right, given that when it is properly raised, it leads to only one result: dismissal. But its true nature—a mere legislative "act of grace"[47]—is modest, especially when compared to weightier, constitutionally based rights that we have nonetheless deemed forfeitable.[48]

■ This opinion, however, should not be read to grant unfettered powers to the judicial branch. Courts can still violate the Due Process Clause of the Fifth Amendment through an "unforeseeable judicial enlargement of a criminal statute, applied retroactively."[49] Although this limitation is often regarded as the judicial cognate of the *ex post facto* prohibition,[50] the Supreme Court has made clear that the two are not co-extensive.[51] Instead, the due process limitation—rooted in the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime"[52]—protects against a "judicial enlargement" of a statute, which is not alleged here.[53]

## E. The importance of protecting good-faith, arm's length plea agreements

Our decision today is further bolstered by the unintended effect that the distinction between factual and pure-law limitations defenses has had on the sanctity and finality of plea agreements. In *Proctor*, we advanced several practical reasons for treating a limitations defense as forfeitable, arguing that the defense has "little to do with the truth-finding function" of our criminal-justice system and that a defendant might waive the defense "to gain time for plea bargaining" or "to vindicate his good name."[54] But most significantly, the *Phillips* dissent warned of the exact circumstance we now address, adding to

46. *Marin*, 851 S.W.2d at 279. *See also Grado v. State*, 445 S.W.3d 736, 739 (Tex.Crim.App. 2014) ("In *Marin*, we held that the general preservation requirement's application turns on the nature of the right allegedly infringed.").

47. *Proctor*, 967 S.W.2d at 843. *See also Phillips*, 362 S.W.3d at 626 (Keller, P.J., dissenting).

48. *See, e.g., Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex.Crim.App.2005) (holding that a defendant forfeited his Confrontation Clause claim by failing to properly preserve it at trial). *See also Anderson v. State*, 301 S.W.3d 276, 280 (Tex.Crim.App.2009) ("[O]ur prior decisions make clear that numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved.").

49. *See Marks*, 430 U.S. at 192, 97 S.Ct. 990 (citing *Bouie*, 378 U.S. at 353–54, 84 S.Ct. 1697).

50. *See id.* at 191–92, 97 S.Ct. 990.

51. *Rogers*, 532 U.S. at 459, 121 S.Ct. 1693 ("Contrary to petitioner's suggestion, nowhere in [*Bouie*] did we go so far as to incorporate jot-for-jot the specific categories of *Calder* into due process limitations on the retroactive application of judicial decisions.").

52. *See id.* at 457, 121 S.Ct. 1693 (citing *Bouie*, 378 U.S. at 350, 84 S.Ct. 1697).

53. *See Marks*, 430 U.S. at 192, 97 S.Ct. 990.

54. *Proctor*, 967 S.W.2d at 844. *See also Phillips*, 362 S.W.3d at 624–25 (Keller, P.J., dissenting).

*Proctor*'s list "the possibility that foregoing a limitations defense could be part of a plea agreement involving multiple charges."[55]

■ It is this unintended consequence of our *Phillips* holding that so concerns us and spurs our decision to overrule it. Courts have long recognized the important role plea agreements play in our criminal-justice system.[56] The agreement itself "may contain a wide variety of stipulations and conditions that allow the state to tailor conditions in order to reach agreement with the defendant."[57] Allowing for such wide-ranging plea agreements benefits not only the defendant and the State, who are free to explore a full array of stipulations and conditions in plea negotiations, but also the courts, whose dockets are thinned by parties ready and willing to settle.

■ But if we adhere to *Phillips*, we invite the very set of circumstances that we now address. Generally, a defendant who accepts the benefits of a plea agreement is estopped from challenging its validity.[58] Yet estoppel does not apply when the trial court lacked jurisdiction.[59] Therefore, because *Phillips* held that a pure-law limitations defense is an attack on a court's jurisdiction,[60] a defendant could "reap the benefits of an illegal sentence, which is lighter than what the legal sentence would have been, and then turn around and attack the legality of the illegal, lighter sentence when it serves his interest to do so," as Heilman now tries to do.[61] As part of an arm's length plea agreement made in good faith, Heilman expressly waived his limitations defense to a time-barred misdemeanor offense in two written and signed documents so as to plead guilty and avoid facing a state-jail felony indictment. But now, after serving the six months of his deferred-adjudication sentence, he seeks the judiciary's assistance in reneging. Our decision today addresses this inequity.

And if we addressed this inequity by merely focusing on Heilman's multiple waivers without first overturning *Phillips*, we would unnecessarily complicate how we analyze the statute-of-limitations defense under *Marin*.[62] Indeed, doing so would again allow for the categorization of the defense to depend not on its nature, as *Marin* requires, but on the circumstances under which it was raised.[63]

## F. Heilman's Complicity in the Circumstances Raising His Limitations Defense

Courts also often bar an otherwise valid limitations defense when, as here, the de-

55. *Phillips*, 362 S.W.3d at 625 n.58 (Keller, P.J., dissenting).

56. *See, e.g., Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (cataloguing the advantages of a plea agreement to both a defendant and the prosecution).

57. *Moore v. State*, 295 S.W.3d 329, 331–32 (Tex.Crim.App.2009).

58. *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim.App.2007).

59. *Id.*

60. *Phillips*, 362 S.W.3d at 617.

61. *See Rhodes*, 240 S.W.3d at 891–92 (citations omitted) (seeking to avoid exactly such a result).

62. *See Proctor*, 967 S.W.2d at 844 ("We also conclude that placing limitations in the second *Marin* category is equally inappropriate. However important the statute of limitations might be to a defendant in a given case, the statute can hardly be deemed 'fundamental to the proper functioning of our adjudicatory system.' Indeed, at common law there was no limitation as to the time within which offenses could be prosecuted.").

63. *See Grado*, 445 S.W.3d at 739.

fendant attempts to present it with unclean hands by creating the very circumstances for its application. For example, in *Spaziano v. Florida*, the Supreme Court upheld a judge's rejection of a defendant's requested lesser-included instruction when the defendant refused to also waive his limitations defense to the lesser-included offense.[64] The Court explained that to hold otherwise would require "that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, [when] in reality there is no choice."[65] The Court instead gave Spaziano the "choice between having the benefit of the lesser included offense instruction or asserting the statute of limitations on the lesser included offenses."[66]

Citing *Spaziano*, in *State v. Yount*, we found a defendant estopped from attacking his conviction for a time-barred lesser-included offense when the defendant himself requested the lesser-included instruction.[67] When the jury convicted him of only the lesser-included offense, Yount raised his limitations defense and moved to set aside the judgment.[68] We reversed the trial court's granting of that motion, concluding that Yount could not both request the benefits of the instruction and then attack his conviction based on the instruction.[69]

Heilman faced a similar choice. He could retain his limitations defense to the misdemeanor offense and risk a state-jail felony indictment, or forfeit (or in this case waive) his limitations defense and plead to the misdemeanor offense. Heilman chose the latter and cannot now use that choice to attack the trial court's acceptance of his plea and imposition of sentence. He may regret the choice he made, but he must accept its consequences.

Furthermore, *Spaziano* and *Yount* make one thing clear: a statute-of-limitations defense lacking any *ex post facto* component does not attack the jurisdiction of the trial court.[70] If it did, Spaziano would have retained the right to attack the trial court's jurisdiction if he were found guilty of only the time-barred lesser-included offense. Similarly, if it did, once the jury had found Yount guilty of only the lesser-included offense, it in effect would have found that the trial court lacked jurisdiction and no conviction would have been possible, regardless of who requested the lesser-included instruction. Instead, a limitations defense standing alone is merely a procedural "act of grace" by the legislature that can be forfeited.[71]

## III. Conclusion

Heilman's attempt to renege on his guilty plea after accepting its benefits exposes the unintended consequences of our prior holding in *Phillips v. State*. To ensure the sanctity and finality of plea agreements reached in good faith and at

64. *Spaziano v. Florida*, 468 U.S. 447, 456–57, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), *abrogated on other grounds by Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

65. *Id.* at 456, 104 S.Ct. 3154.

66. *Id.*

67. *State v. Yount*, 853 S.W.2d 6, 10 (Tex.Crim. App.1993).

68. *Id.* at 7.

69. *Id.* at 9–10.

70. *Id.* at 8 ("[A]n indictment which charges the commission of an offense barred by limitations still confers jurisdiction upon the trial court, such that the defendant must bring the defect to the attention of the trial court in order to preserve any error.").

71. *Proctor*, 967 S.W.2d at 843. *See also Phillips*, 362 S.W.3d at 626 (Keller, P.J., dissenting).

arm's length, we will no longer unquestioningly distinguish between factual and pure-law limitations defenses. Instead, in circumstances lacking any legislative *ex post facto* violation—and especially when that occurs in the context of a good-faith, arm's length plea agreement—both are *Marin* category-three forfeitable rights, as under *Proctor v. State*. Therefore, because there was no *ex post facto* violation, the trial court properly exercised its jurisdiction to accept Heilman's plea and Heilman had every right to forfeit (or in this case waive) his limitations defense as part of that plea. We reverse the holdings of the habeas court and the court of appeals, and we remand the case to the court of appeals to assess Heilman's other claims.

NEWELL, J., filed a concurring opinion, in which KELLER, P.J., and HERVEY, J., joined. MEYERS, J., filed a dissenting opinion. JOHNSON, J., filed a dissenting opinion. ALCALA, J., filed a dissenting opinion.

NEWELL, J., filed a concurring opinion in which KELLER, P.J. and HERVEY, J., joined.

I agree that applicant forfeited his right to complain about the limitations bar on his misdemeanor conviction for tampering with a governmental record when he pleaded guilty to the untimely charge in exchange for the State's agreement to forgo indictment on a timely state jail felony charge. I join the majority opinion because I believe the majority is exactly right that this case is in irreconcilable conflict with *Phillips v. State* and that *Phillips* should be overruled. I write separately to explain why I believe the attempts to harmonize this case with *Phillips* fail.

One argument to save *Phillips* hinges on the word "reparable." In *Phillips*, the majority drew a distinction between statute of limitations defenses based upon facts and those based upon "pure law." *Phillips v. State*, 362 S.W.3d 606, 617 (Tex. Crim.App.2011). According to the Court, the reason for this distinction was that a pleading that gives rise to a limitations factual defense is "reparable," while a pleading that gives rise to a statute-of-limitations bar is not. *Id.*

"Reparable" means capable of being mended or put into sound condition or capable of being remedied or made good. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (2002). But the pleading in this case was not capable of being put into sound condition or made good. The misdemeanor information in this case alleged that the offense was committed on October 13, 2008. It was filed on December 22, 2010. There is no tolling language. There is no intervening charging instrument. Under Article 12.02 of the Texas Code of Criminal Procedure, the statute of limitations for this offense is two years. TEX. CODE CRIM. PROC. ANN. art. 12.02 (West 2008). Appellant had an absolute right to quash the information in this case.

Applying *Phillips v. State*, this misdemeanor information was absolutely barred by 100% pure law with no additives or preservatives. *Phillips*, 362 S.W.3d at 617. As this Court held in *Phillips*:

> But *Proctor* governs statute-of-limitations defenses that are based on facts (challenging a pleading that includes a "tolling paragraph," "explanatory averments," or even "innuendo allegations," that suffice to show that the charged offense is not, at least on the face of the indictment, barred by limitations), not pure law (challenging an indictment that shows on its face that prosecution is absolutely barred by the statute of limitations).

*Id.* And in this case, the State's ability to proceed with another offense in another court did nothing to mend the misdemeanor case; the trial judge had to resurrect it.[1]

I also disagree that *Phillips* can be limited to only address claims of *ex post facto* violations primarily because there was no *ex post facto* legislation at issue in *Phillips.* The Court reached its holding in response to the State's argument that this case did not involve *ex post facto* legislation because the statute was written prospectively. *Phillips,* 362 S.W.3d at 617; *see also* Acts 1997, 75th Leg., Ch. 740, § 3 ("The change in the law made by this Act does not apply to an offense if the prosecution of the offense became barred by limitation before the effective date of this Act. The prosecution of that offense remains barred as though this Act had not taken effect."). In essence, the State argued that the statute, by its own terms, did not apply, so there was only a "plain vanilla limitations claim" rather than an issue of *ex post facto* legislation. *Phillips,* 362 S.W.3d at 624 (Keller, P.J., dissenting). This Court's response was telling:

This distinction is irrelevant because the *ex post facto* result is the same—the retroactive application here "revived" a previously barred prosecution.

*Id.* at 617. That "irrelevant" distinction is now the centerpiece of the argument to keep *Phillips* on life support.

The Court relied upon *Carmell v. Texas* to argue that a judicial application of a statute that was not expressly and facially retroactive violated the prohibition against *ex post facto* laws, but the statute at issue in *Carmell* changed the quantum of proof in pending cases. *Carmell v. Texas,* 529 U.S. 513, 530–31, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000). Contrary to the *Phillips* majority's reading of *Carmell,* it was the legislative act in *Carmell* that opened the door to the *ex post facto* violation, not the erroneous judicial application of that act.[2] If there had been only a retrospective judicial application at issue in *Carmell,* then the United States Supreme Court's decision in *Johnson*—two weeks after *Carmell* was decided—would make no sense. In *Johnson,* the United States Supreme Court held that there was no *ex post facto* question where a statute by its own terms did not apply retroactively; the only question in that situation was whether the old statute authorized the trial court's action. *Johnson v. United States,* 529 U.S. 694,

---

1. "Resurrection" means the act or fact of rising again from an inferior state (as death, decay, disuse) into a superior one. Webster's Third New International Dictionary 1937 (2002).

2. The confusion seems to flow from mixing the different *Calder v. Bull* categories. The *Phillips* majority regarded the statute at issue as belonging to the same *Calder v. Bull* category as the statute at issue in *Stogner,* namely the second *Calder v. Bull* category where a statute aggravated or made the crime greater than when committed. *Phillips,* 362 S.W.3d at 616. But the statute at issue in *Stogner* was facially retroactive. *Id.* Consequently, the majority applied *Carmell,* a case involving a statute that reduced the quantum of proof necessary to support a conviction in a pending case—a fourth *Calder v. Bull* category—to justify the holding that a purely judicial application of a statute violates the prohibition against *ex post facto* legislation. *Id.* at 617 ("And, in *Carmell,* the Supreme Court held that the retroactive application of statutes that are not expressly and facially retroactive nonetheless violates the *Ex Post Facto* Clause."). By comparing apples to oranges, the majority in *Phillips* obscured the fact that neither category involves a pure retroactive judicial application of a facially prospective statute like the situation present in *Phillips.* Simply put, a successful *ex post facto* claim invalidates a statute, not the judicial application of it. Because there was no *ex post facto* statute involved in *Phillips,* any discussion of an *ex post facto* violation was necessarily dicta.

702–03, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000); *see also Ortiz v. State*, 93 S.W.3d 79, 91 (Tex.Crim.App.2002). Contrary to the majority's reasoning in *Phillips*, the Supreme Court was always concerned with *ex post facto* legislation, not *ex post facto* results.

To be clear, I do not understand .the majority to hold that a defendant must object to preserve a claim that a retrospective statute violates the constitutional prohibitions against *ex post facto* legislation. Nor do I read the majority's holding in this case to say that an *ex post facto* violation is anything but fundamental error. But I join the majority opinion because *Phillips* did not involve *ex post facto* legislation; it involved a "plain-vanilla limitations claim." *Phillips*, 362 S.W.3d at 624 (Keller, P.J., dissenting). This Court held in *Proctor* that such claims are forfeitable, and I do not believe the limitations on the scope of *Proctor* to "fact-based" limitations defenses was warranted.[3]

This Court should not frivolously overrule established precedent. *Paulson v. State*, 28 S.W.3d 570, 571 (Tex.Crim.App. 2000). But *stare decisis* is not an inexorable command. While there is a strong presumption in favor of established law, this Court may reconsider its precedent when: (1) the original rule or decision was flawed from the outset; (2) the rule's application produces inconsistent results; (3) the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned; (4) the rule regularly produces results that are unjust, that are unanticipated by the principle underlying the rule, or that place unnecessary burdens on the system; and (5) the reasons that support the rule have been undercut with the passage of time. *Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex. Crim.App.2007). Adhering to such precedent does not promote judicial efficiency and consistency, encourage reliance upon judicial decisions, or contribute to the integrity of the judicial process. *Paulson*, 28 S.W.3d at 571.

I join the majority because I believe *Phillips* qualifies as that type of precedent. That almost every member of this Court agrees to a result in contravention of the one *Phillips* clearly requires further demonstrates the unworkability of *Phillips*.[4] The majority is correct; either this case goes or *Phillips* does. Like the majority, I vote that it's *Phillips*.

MEYERS, J., filed a dissenting opinion.

Today the majority overrules our prior decision in *Phillips v. State*, 362 S.W.3d

---

3. Judge Meyers argues in his dissent that this Court should overrule *Proctor* altogether rather than *Phillips*. Neither party argues that such action is necessary to the resolution of the case. More importantly, doing so would not resolve this case because Judge Meyers' reliance upon *Yount* overlooks that the charging instrument in *Yount* was not subject to an absolute limitations bar. *State v. Yount*, 853 S.W.2d 6, 7 (Tex.Crim.App.1993) (defendant indicted for involuntary manslaughter and requested jury instruction on lesser-included offense of DWI even though it was barred by the statute of limitations). Had the case proceeded in felony court rather than misdemeanor court, then a pure application of *Yount* uninfluenced by *Proctor* would allow

for the denial of relief. That *Phillips* would require the denial of relief in felony court but not in misdemeanor court further emphasizes to me how unworkable the holding in *Phillips* is.

4. While Judge Johnson dissents, she agrees that appellant is not entitled to relief. Judge Meyers does not quite say in his dissent that appellant is estopped from bringing this claim on appeal, but his reliance upon *Ex parte Yount* and his call to overrule *Proctor* seems to suggest it. Judge Alcala's call to only overrule part of *Phillips* further demonstrates to me that *Phillips* was built upon an unstable foundation.

606 (Tex.Crim.App.2011), and determines that Appellant is not entitled to relief on his statute of limitations claim. With today's decision we are continuing down an unreasonable path of placing the entire burden on the defendant to complain of statute of limitations issues. The statute of limitations should not be a defensive issue, and I believe that the case we should actually be overruling today is *Proctor v. State*, 967 S.W.2d 840 (Tex.Crim.App. 1998).

In *Proctor* we changed the law concerning the statute of limitations and held, for the first time, that limitations is a rule that must be implemented only upon the request of the defendant, rather than it being an absolute requirement that must be proved by the State in every criminal prosecution. *Id.* at 844. However, making the statute of limitations a defensive issue was problematic then, and it is problematic now. Defensive issues should be those that require a defendant to show that he is not guilty of a crime. The statute of limitations has nothing to do with a defendant's guilt—it relates only to the State's timely filing of a case—and therefore, the defendant should not bear the heavy burden of invoking it. The statute of limitations is meant to be something the State must prove in order to prosecute, much like it must prove that a crime took place in a particular county. TEX.CODE CRIM. PROC. art. 13.17. Further, the State is allowed to allege in the indictment that the crime took place "on or about" a certain date, so long as that date is "anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation." TEX.CODE CRIM. PROC. art. 21.02. Requiring that the dates the State alleges not be barred by limitation is at odds with holding that the State must actually prove that the offense

occurred within the statute of limitations only if the defendant raises the issue. *See Proctor v. State*, 967 S.W.2d at 847 (Meyers, J., dissenting).

The present problems surrounding the statute of limitations arose when this court decided to change the law and make limitations a defensive issue. *Proctor* is a not a well-reasoned or substantiated opinion, and was decided the way it was only in order to keep the convictions in the case from being overturned. Today, rather than overruling *Phillips*, we should be correcting the mistake made in *Proctor* and return to considering the statute of limitations an absolute requirement that is the State's burden to prove. Therefore, I would overrule *Proctor* and remand this case to the court of appeals to be examined in light of *State v. Yount*, 853 S.W.2d 6 (Tex.Crim.App.1993), in which we held that a defendant who requested a jury instruction on a lesser-included offense could not later complain that his conviction of that offense was barred by limitations. For the foregoing reasons, I respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

While I agree that Eric Heilman is not entitled to relief on his "statute of limitations" claim, I cannot join the majority's opinion or its judgment because it is neither necessary nor appropriate to overrule our prior decision in *Phillips v. State*.[1] Here, the defendant explicitly traded his right to make any "statute of limitations" claim to the misdemeanor charge of tampering with a governmental record in exchange for avoiding indictment for the corresponding state-jail felony offense that was not time barred. Just as a defendant who requests a jury charge on a time-barred lesser-included offense waives his

1. 362 S.W.3d 606 (Tex.Crim.App.2011).

right to later claim that his conviction on the lesser offense was barred by limitations,[2] so too a defendant who expressly trades his right to a limitations claim on a misdemeanor to avoid being charged with a felony waives his right to later claim that his conviction was barred by limitations. Heilman might have chutzpah, but he does not have a valid limitations claim.[3]

## I.

Heilman, a member of the Beaumont Police Department, was investigating a drug-trafficking operation in October 2008. He, Officer Brad Beaulieu, and a confidential informant set up a sting operation with a suspected drug dealer, but their target left the scene without completing the transaction. Heilman and Beaulieu chased the suspect and arrested him. They seized cash and a large cache of cocaine from him. But, in drafting his probable-cause affidavit, Heilman omitted any reference to the confidential informant or the sting operation. The suspect eventually disclosed the existence and participation of the confidential informant.

A special prosecutor was appointed, and a grand jury investigation began. According to the habeas court's findings, Heilman's depiction of the events was as follows:

> The investigation of Applicant [Heilman] continued through the fall [of 2010]. On November 23, 2010, Applicant is advised that the file of the Beaumont Police Department Internal Affairs Investigation was being subpoenaed to the Jefferson County Grand Jury. On December 13 or 14, Applicant was advised that the grand jury had met and that he had an

opportunity to plead guilty to a misdemeanor or proceed to trial after indictment on felony charges. On December 17, 2010, Applicant was advised that he had until December 22, 2010, to decide whether to enter a plea and accept the misdemeanor offer.

The Special Prosecutor filled in the events from his perspective:

> On December 14, 2010 [applicant's original trial counsel] was advised that the grand jury voted unanimously to indict both Eric Heilman and Brad Beaulieu for the felony offenses of tampering with governmental records and, in the case of Brad Beaulieu, aggravated perjury. At the request of and with the consent of the grand jury, an offer was extended to Heilman and Beaulieu through their attorney . . . to plead guilty to [the] misdemeanor offense of tampering with a governmental record for deferred adjudication in lieu of being formally indicted on felony charges. The plea offer was conditioned on their express waiver of any statute of limitations claim that they may have regarding the misdemeanor charges to which they would plead. The grand jury adjourned until December 22 to allow Officers Heilman and Beaulieu to consider the offer.

> On December 22, Officers Heilman and Beaulieu appeared before the Court with new attorneys, were properly admonished, waived their rights, expressly waived the statute of limitations, and pleaded guilty to the misdemeanor charge of tampering with a governmental record. In light of the pleas, the grand jury's term expired on December

---

**2.** *See State v. Yount,* 853 S.W.2d 6, 9 (Tex. Crim.App.1993) (when defendant requested that the jury be instructed on the lesser-included offense, he was estopped from com-

plaining that his conviction of that lesser offense was barred by limitations).

**3.** In fact, Heilman did not originally raise this claim; the habeas judge did.

31, 2010, without formally indicting either officer.

An information charging Heilman with the misdemeanor offense was filed in the county court on December 22, 2010. At the guilty-plea hearing on that day, Heilman and his attorney, along with the special prosecutor and the trial judge, signed the standard written documents, admonishments, and waivers. A handwritten sentence at the bottom of the page read, "I hereby waive all statute of limitations." Directly above that sentence are applicant's initials, as well as those of his attorney. On the official Deferred Adjudication Order, next to three of the probation conditions, is the following statement:

No State opposition to early termination after six months[.] Defense will not file for early termination before six months[.] Defense waives statute [of] limitations per Judge Flores[.]

Heilman had no right of appeal and did not attempt to appeal. He followed his end of the bargain and did not file for early termination for six months. The state followed its part of the bargain and did not oppose early termination. However, four months after discharging his probation and obtaining a Deferred Adjudication Order of Dismissal, Heilman filed an application for a writ of habeas corpus claiming, *inter alia,* that he had entered an involuntary plea.

The habeas judge, on his own, raised the issue of whether Heilman's prosecution was barred by the two-year statute of limitations for the misdemeanor offense of tampering with a governmental record. Relying in part on this Court's decision in *Phillips v. State,*[4] he held that the two-year statute of limitations barred applicant's prosecution and that the agreement to waive the statute of limitations was itself "void and a nullity." He concluded that he did not have authority to enter a deferred-adjudication order as a matter of law. The judge dismissed the information and vacated the deferred adjudication order.

The state appealed, and the court of appeals affirmed the habeas judge.

## II.

The problem with the lower courts' reliance on *Phillips* is that, in *Phillips,* we explained that a "matter of law" statute-of-limitations claim is one in which the charging instrument shows on its face that the prosecution is time-barred and that the defect is not "reparable."[5] There is absolutely nothing that the state can do to save its prosecution; it is irreparably barred. For example, in *Phillips,* the defendant was charged with twelve counts of sexual offenses committed in 1982 and 1983, but no indictment was filed until 2007. The statute of limitations for all twelve counts had run in 1993 under the then-existing ten-year statute of limitations, and there was no other offense that had arisen from the same conduct with which to charge him. There was nothing the state could do to resurrect those charges, which had been time-barred for fourteen years. The problem was incurable. Phillips was therefore entitled to prevail on his *ex post facto* claim as a matter of law.

But if the pleading is "reparable," then the statute of limitations is a factual affirmative defense on which the defendant

---

4. 362 S.W.3d 606 (Tex.Crim.App.2011). Serendipitously, we delivered our opinion in *Phillips* just nine days before Heilman's probation was formally discharged.

5. *Id.* at 617.

bears the burden of proof.[6] As we explained in *Phillips,*

> The pleading that gives rise to a limitations factual defense is reparable. The pleading that gives rise to a statute-of-limitations bar is not. The first is forfeited unless raised before or during the trial and cannot be raised in a pretrial writ. The second—a true *ex post facto* violation—is not forfeitable under *Ieppert.*[7]

In this case, unlike *Phillips,* another offense that arose from the same conduct was not time-barred. Had Heilman said that he did not want to waive his statute-of-limitations claim to the misdemeanor, the prosecutor could say, "Fine. The grand jury will return a felony indictment this afternoon." This misdemeanor information was easily "reparable" by charging the state-jail felony offense of tampering with a governmental record, which has a three-year statute of limitations and was not time-barred.[8] Although the face of the indictment looks as if the charge were time-barred, a glance at the plea papers and deferred-adjudication judgment and conditions of probation shows that, unlike *Phillips,* Heilman explicitly waived his right to complain about the statute of limitations concerning the misdemeanor in return for the prosecutor's act of not obtaining a felony indictment for which the statute of limitations had not run. As the state has consistently argued, Heilman " 'benefitted handsomely from his bargain,' "[9] and he cannot complain now.[10] In comparison, Phillips went to trial and benefitted not at all. And, before this Court, the state, represented by the State Prosecuting Attorney, conceded that the state was mistaken at trial and on direct appeal and that the statute of limitations had run in 1993, four years before the Legislature passed the extension of the statute of limitations on which the state had relied.

This situation is the converse of that addressed by the Supreme Court in *Spaziano v. Florida.*[11] In that case, the defendant was being tried on capital-murder charges, but, at the jury-charge conference, the trial judge refused to charge the jury on the lesser-included offenses of murder and manslaughter because the defendant refused to waive the statute of limitations, which had already run on those offenses.[12] On appeal, the defendant complained that he should not be required to waive one substantive right—reliance on the statute of limitations—to obtain the benefit of another substantive right—instructions on lesser-included offenses.[13] The Supreme Court held that the defen-

---

6. *Id.*

7. *Id.* (citing *Ieppert v. State,* 908 S.W.2d 217 (Tex.Crim.App.1995).

8. Tex.Code Crim Proc. art. 12.01(6); *see State v. Collier,* 285 S.W.3d 133, 135 (Tex.App.–Houston [1st Dist.] 2009, no pet.) ("The statute of limitations for the state jail felony of tampering with a governmental record is three years.").

9. *State v. Heilman,* 413 S.W.3d 503, 508 (Tex.App.–Beaumont 2013) (quoting prosecutor).

10. *See Rhodes v. State,* 240 S.W.3d 882, 891 (Tex.Crim.App.2007) ("[o]ne who accepts the benefits of a judgment, decree, or judicial order is estopped to deny the validity or propriety thereof, or any part thereof, on any grounds; nor can he reject its burdensome consequences. The only exception to this principle is for challenges to the subject-matter jurisdiction of the court rendering the judgment.") (internal quotation marks and citation omitted).

11. 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).

12. *Id.* at 450, 104 S.Ct. 3154.

13. *Id.* at 455, 104 S.Ct. 3154.

dant could not have his cake and eat it, too. The defendant was entitled to make his choice: instructions on the lesser-included offenses if he waived the statute of limitations on those lesser offenses or no lesser-included instructions if he did not waive the limitations claim.[14] We held the same in *State v. Yount;* the defendant may either waive the statute of limitations and obtain instructions on lesser-included offenses or insist upon the statute of limitations and forego lesser-included instruction on offenses that are otherwise time-barred.[15]

The bottom line in those cases is that the statute of limitations may be expressly waived in special circumstances when the limitations statute does not protect the defendant's or society's interests.[16] As a public-policy matter, when the defendant may still be prosecuted for acts that are not barred by a statute of limitations and arose from the same criminal episode, the limitations statute does not provide full protection to the defendant, and the rationale for the rule does not apply.[17]

There is no question that, if the special prosecutor had indicted Heilman for the state-jail felony offense of tampering with a governmental record (an offense that was not time-barred), Heilman could and would have waived the statute of limitations if he pled guilty to the lesser-included misdemeanor offense even though it was technically time-barred.[18] The re-

---

**14.** *Id.* at 456, 104 S.Ct. 3154. The Court explained,

> If the jury is not to be tricked into thinking that there is a range of offenses for which the defendant may be held accountable, then the question is whether *Beck* requires that a lesser included offense instruction be given, with the defendant being forced to waive the expired statute of limitations on those offenses, or whether the defendant should be given a choice between having the benefit of the lesser included offense instruction or asserting the statute of limitations on the lesser included offenses. We think the better option is that the defendant be given the choice.

*Id.* As the Supreme Court made clear, waiver of the statute of limitations in this context may protect the interests of the jury and those of society, as well as the defendant.

**15.** *State v. Yount,* 853 S.W.2d 6, 9 (Tex.Crim. App.1993).

**16.** *See Hulsey v. State,* — So.3d —, CR–13–0357, 2014 WL 4957734, at *2 (Ala.Crim.App. Oct. 3, 2014) ("Notwithstanding the fact that in certain special circumstances where the bar of the statute may be expressly waived when it does not operate in the defendant's favor, . . . under ordinary circumstances the bar of the statute is not waived by a mere failure to assert it, and the statute of limitations may be properly asserted on appeal or in a petition for post-conviction relief.") (cit-

ing *Spaziano;* other internal citations omitted); *Cartagena v. State,* 125 So.3d 919, 921 (Fla.Dist.Ct.App.2013) (defendant may expressly waive statute of limitations in return for instructions on lesser-included offenses if certain procedures are followed); *People v. Brocksmith,* 237 Ill.App.3d 818, 178 Ill.Dec. 536, 604 N.E.2d 1059, 1065 (1992) ("If a defendant wishes to seek a lesser offense and try for the possible compromise verdict, he must be willing to accept the consequences of that decision, even if it means conviction of a crime for which the statute of limitations has expired."), *affirmed,* 162 Ill.2d 224, 205 Ill. Dec. 113, 642 N.E.2d 1230 (1994). *See generally,* Alan L. Adelstein, *Conflict of the Criminal Statute of Limitations with Lesser Offenses at Trial,* 37 Wm. & Mary L.Rev. 199 (1995); Tim A. Thomas, Annotation, *Waivability of Bar of Limitations Against Criminal Prosecution,* 78 A.L.R.4th 693 (1990); Annotation, *Conviction of Lesser Offense, Against Which Statute of Limitations Has Run, Where Statute Has Not Run Against Offense With Which Defendant Is Charged,* 47 A.L.R.2d 887 (1956).

**17.** *See Cartagena,* 125 So.3d at 921.

**18.** " By statute, a district court is permitted to try a misdemeanor that is included within a felony offense, even though the misdemeanor would not otherwise be subject to that court's jurisdiction." *McKinney v. State,* 207 S.W.3d 366, 376 (Tex.Crim.App.2006). *See* Tex.Code

verse is also true: If an indictment or information charging the misdemeanor offense of tampering with a governmental record is time-barred, but the state-jail felony offense of tampering with a governmental record is not,[19] then a defendant may expressly waive reliance on the statute of limitations and plead to the misdemeanor offense to avoid indictment and trial on the corresponding felony offense.

In sum, Heilman could, and did, expressly waive his right to rely upon the statute of limitations in pleading guilty to the misdemeanor offense of tampering with a governmental record in exchange for the state's agreement not to indict him on the state-jail felony tampering offense for which the statute of limitations had not run. But because the Court goes too far and overrules the easily distinguishable *Phillips*, I must dissent.

ALCALA, J., filed a dissenting opinion.

Because it unnecessarily overrules this Court's recent precedent in *Phillips v. State*, I respectfully dissent from this Court's judgment reversing the court of appeals' affirmance of the order granting post-conviction habeas corpus relief to Eric Michael Heilman. *See Phillips v. State*, 362 S.W.3d 606, 608–10 (Tex.Crim.App. 2011); *State v. Heilman*, 413 S.W.3d 503, 508 (Tex.App.–Beaumont 2013). The majority opinion determines that it is necessary to entirely overrule *Phillips*, a distinguishable case involving an *ex post facto* claim, in order to resolve this relatively simple appeal involving an ordinary statute-of-limitations claim, but I disagree. I would reverse the court of appeals' holding that the trial court lacked jurisdiction and

instead remand the case to that court for further consideration of Heilman's claim on the merits. *See Heilman*, 413 S.W.3d at 507–08. Because it goes too far in delving into the *ex post facto* issues that were at the heart of this Court's holding in *Phillips*, but which are not implicated in the present appeal, I cannot join this Court's majority opinion, nor can I agree with its decision to resolve the merits of Heilman's claim on that basis.

## I. Background

The facts of this case involve a simple claim, raised for the first time in an application for a writ of habeas corpus, that a conviction was absolutely barred by the running of the statute of limitations. Heilman had agreed to plead guilty to the misdemeanor offense of tampering with a governmental record in exchange for the State's agreement not to pursue felony charges against him, and he was placed on deferred adjudication. Although the two-year statute of limitations had already run at the time of his guilty plea, Heilman waived his limitations defense, as indicated by his signature on the Deferred Adjudication Order, which states, "Defense waives statute [of] limitation per Judge Flores."

After his successful completion of deferred adjudication, Heilman filed an application for a writ of habeas corpus. In response to Heilman's application, the habeas court determined that "the prosecution for the misdemeanor offense was, in the words and plain sense of the charging document 'on its face[,]' barred by the applicable statute of limitations." *Id.* at 506. The habeas court dismissed the in-

CRIM. PROC., arts. 4.05 (jurisdiction of district courts), 4.06 (when felony includes misdemeanor).

19. The pertinent distinction between the misdemeanor and state-jail felony offenses of

tampering with a governmental record is that, to establish the felony, the state must prove that the defendant intended to "harm or defraud another" when he made a false entry in a governmental record. TEX. PENAL CODE § 37.10(c)(1).

formation and vacated the deferred adjudication order. *Id.* On appeal, the court of appeals affirmed the habeas court's order granting relief. *Id.* at 508. Relying on this Court's opinion in *Phillips,* it determined that, although generally a statute-of-limitations bar is not jurisdictional, that rule does not apply to " 'pure law' challenges, where the charging instrument shows on its face that the prosecution is absolutely barred by the statute of limitations." *Id.* at 507 (citing *Phillips,* 362 S.W.3d at 617–18). It further cited this Court's opinion in *Ex parte Smith* for the proposition that, " '[w]hen the face of the pleading shows that the offense charged is barred by limitations, that pleading is so fundamentally defective that the trial court does not have jurisdiction and habeas relief should be granted.' " *Id.* at 508 (quoting *Ex parte Smith,* 178 S.W.3d 797, 802 (Tex.Crim.App.2005) (citations and quotation marks omitted)). Applying these principles to Heilman's case, the court of appeals determined that, given that the statute of limitations had already run at the time of his plea of guilty, "the information, on its face, charged an offense the State could no longer prosecute, and one over which the trial court did not have jurisdiction." *Id.*

## II. It Is Unnecessary to Overrule *Phillips* In Its Entirety

Contrary to the majority opinion's determination that it cannot resolve Heilman's appeal without overruling *Phillips* in its entirety, I conclude that it is unnecessary and unadvisable for this Court to overrule *Phillips*'s core holding that an *ex post facto* violation occurred in that case. *See Phillips,* 362 S.W.3d at 616. Heilman's claim does not involve the application of retroactive legislation, nor does it implicate the *Ex Post Facto* Clause in any way, and, therefore, it is beyond the proper scope of our review to revisit *Phillips*'s

holding with respect to those matters in the course of resolving this appeal. I would, therefore, more narrowly address only the "pure law" language from *Phillips,* and I would reserve judgment as to the correctness of *Phillips*'s *ex post facto* analysis until that issue is properly presented by the facts of a future case.

### A. Unnecessary to Disturb *Phillips* Court's Analysis of *Ex Post Facto* Claim

As the first step in its analysis in *Phillips,* the Court addressed the merits of Phillips's claim that his 2007 convictions for sexual offenses committed in 1982 and 1983 violated the *Ex Post Facto* clauses of the state and federal constitutions. *See id.* at 610–16 (discussing "absolute" right to be free from *ex post facto* laws, and holding that Phillips's *ex post facto* claim was "valid"). The basis for Phillips's complaint was that, by applying a 1997 amendment to the statute of limitations in such a way as to resurrect his prosecution for otherwise time-barred offenses, his convictions violated the *Ex Post Facto* Clause. *Id.* at 607–08. Because his offenses had been "extinguished by the running of limitations" in 1993, those offenses, he contended, "could not be revived by the 1997 version of the statute of limitations" without violating that constitutional prohibition. *Id.* at 609–10. After the court of appeals rejected his argument, this Court granted Phillips's petition for discretionary review to determine whether the "appellate court improperly appl[ied] the decision in *Stogner v. California,* 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003)[,] allowing convictions for offenses which had been extinguished by the running of limitations and thereby violat[ing] the *ex post facto* provisions of the Texas and Federal Constitutions[.]"

Addressing the merits of Phillips's *ex post facto* complaint, the Court held that

the application of the amended statute of limitations to Phillips's conduct violated the *Ex Post Facto* Clause. *Phillips*, 362 S.W.3d at 616. It stated that "prosecution under the 2007 indictment ... was absolutely barred by the statute of limitations in 1993. These charges could not be resurrected by a 1997 statute extending the statute of limitations for sexual offenses." *Id.* at 607; *see also id.* at 613 (explaining principle that, to comply with *Ex Post Facto* Clause, "a statute of limitations may be extended by the [L]egislature, but a prosecution within the new time period will be permitted only if the limitations period had not already run before the law was changed"). Although the Court in *Phillips* observed that the 1997 amendment contained a standard savings clause and thus was "not an *ex post facto* law on its face," the Court nevertheless held that the statute's "application to a situation in which the statute of limitations had already run before its enactment violates that constitutional provision." *Id.* at 616; *see also id.* at 610 (determining that the *Ex Post Facto* Clause applies "not only to laws that are facially retroactive, but also to laws that are applied retroactively") (citations omitted).

As the court of appeals in this case indicated, unlike the complaint in *Phillips*, Heilman's claim does not implicate or rely upon the *Ex Post Facto* Clause in any way, and the court of appeals did not address that aspect of *Phillips* in reaching its holding. *See Heilman*, 413 S.W.3d at 507 n.1 (distinguishing *Phillips* because it "dealt with an ex post facto claim. Court action, not an ex post facto law, was under consideration in the habeas proceeding in this case."). The core holding in *Phillips*— that application of an amended statute of limitations to conduct for which the prior limitations period had already run results in an *ex post facto* violation—is irrelevant to our resolution of Heilman's claim, which,

by contrast, involves a relatively straightforward argument that prosecution was absolutely barred by the running of the statute of limitations. *Compare Phillips*, 362 S.W.3d at 616, *with Heilman*, 413 S.W.3d at 507–08. This Court should accordingly limit its reevaluation of *Phillips* to those matters that are called into question by the facts of this case.

Judicial restraint and *stare decisis* counsel against the majority opinion's approach in revisiting matters that are beyond the scope of the issue presently before us. In *Rangel v. State*, this Court cautioned that "[j]udicial restraint and prudence prevent us from reaching out and grabbing issues simply because they are interesting and important. We will exercise our discretionary review authority only where the issues are properly presented for our consideration." 250 S.W.3d 96, 98 (Tex.Crim. App.2008). And "*stare decisis* should generally be followed, because it promotes judicial efficiency and consistency, it fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Hammock v. State*, 46 S.W.3d 889, 892–93 (Tex.Crim. App.2001) (citing *Proctor v. State*, 967 S.W.2d 840, 844 (Tex.Crim.App.1998)). These principles all counsel against the majority opinion's decision to overrule the *ex post facto* holding in *Phillips*, which involved a discrete claim that application of an amended statute of limitations had resulted in an *ex post facto* violation, and which is not properly presented for our review because it was neither addressed by the court of appeals nor called into question by the facts of this case.

**B.** *Phillips*'s "Pure Law" Discussion Must Be Overruled

Although I disagree with this Court's majority opinion's decision to overrule *Phillips*'s holding as to the merits of the

*ex post facto* claim in that case, I agree with its determination that it is necessary to reevaluate, and ultimately overrule, some problematic language in *Phillips* indicating that a "pure law" statute-of-limitations claim, even one that does not implicate *ex post facto* concerns, constitutes a category-one, non-forfeitable right. *See Phillips*, 362 S.W.3d at 608, 616–19; *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim.App.1993).

In *Phillips*, after initially concluding that Phillips had presented a meritorious *ex post facto* claim, the Court then addressed the State's argument that Phillips had nevertheless forfeited his complaint by failing to raise it in the trial court. 362 S.W.3d at 617. In the course of rejecting that argument, the *Phillips* Court initially explained that the right to be free from *ex post facto* laws is a category-one, non-waivable right. *Id.* at 611–12 (describing claims based on *Ex Post Facto* Clause as implicating an "absolute right—a first category *Marin* right," which "cannot be waived or forfeited") (citing *Marin*, 851 S.W.2d at 279; *Ieppert v. State*, 908 S.W.2d 217, 220 (Tex.Crim.App.1995)). That rationale, standing alone, would have constituted an adequate basis upon which to hold that Phillips had not forfeited his *ex post facto* complaint. *Phillips* should have stopped there, but instead, in dicta, it went on to discuss law that was unnecessary to its holding and that has become problematic in its broader application to this case.

In response to the State's argument that relief should be foreclosed by this Court's precedent in *Proctor*, the Court in *Phillips* broadly indicated that the *Proctor* rule was inapplicable to all situations where the indictment shows on its face that prosecution is barred by the running of the statute of limitations. *See id.* at 616–18; *Proctor*, 967 S.W.2d at 844. Specifically, to address

the State's argument that *Proctor* had held that a defendant forfeits a statute-of-limitations defense if he does not assert it at or before the guilt stage of trial, *Phillips* stated,

> *Proctor* governs statute-of-limitations defenses that are based on facts (challenging a pleading that includes a "tolling paragraph," "explanatory averments," or even "innuendo allegations," that suffice to show that the charged offense is not, at least on the face of the indictment, barred by limitations), not [to those based on] pure law (challenging an indictment that shows on its face that prosecution is absolutely barred by the statute of limitations). The pleading that gives rise to a limitations factual defense is reparable. The pleading that gives rise to a statute-of-limitations bar is not. The first is forfeited unless raised before or during the trial and cannot be raised in a pretrial writ. The second—a true *ex post facto* violation—is not forfeitable under *Ieppert*.

*Phillips*, 362 S.W.3d at 617–18 (citations omitted). It is this passage from *Phillips* that the court of appeals relied upon in concluding that, even in situations lacking any suggestion of an *ex post facto* violation, a "pure law" limitations claim implicates a categorical right that cannot be waived or forfeited and constitutes an absolute bar to prosecution. *See Heilman*, 413 S.W.3d at 507–08. And it is this aspect of *Phillips* that must now be overruled. In suggesting that a "pure law" situation would always result in a non-forfeitable, categorical bar to prosecution, this portion of the discussion in *Phillips* was unnecessary to its holding with respect to what it had characterized as the category-one *Marin* right that was at issue there, namely, the *ex post facto* violation based on the application of new legislation affecting the limitations period. *See Phil-*

*lips,* 362 S.W.3d at 611–12.[1] By including, in dicta, broader language that would apply even to category-three *Marin* rights that were not at issue in *Phillips,* this portion of *Phillips* was inconsistent with *Proctor.* *See id.* at 617–18; *Proctor,* 967 S.W.2d at 844. I disagree that this broader language necessarily should be interpreted as constituting part of the Court's holding in *Phillips* given that the facts of that case did not involve an ordinary statute-of-limitations claim. But because this erroneous principle from *Phillips* was the basis for the court of appeals' holding that the trial court lacked jurisdiction over Heilman's case, I would overrule this broader language and hold that *Proctor* applies to claims involving an ordinary lapse of a limitations period where there is no argument that any legislation has extended a limitations period, such as the claim presented here by Heilman. *See Heilman,* 413 S.W.3d at 507–08; *Proctor,* 967 S.W.2d at 844.

### III. Conclusion

Because I am unpersuaded by the majority opinion's determination that it is necessary to overrule *Phillips*'s *ex post facto* analysis in order to resolve the present appeal, I would adhere to *stare decisis* with respect to that holding until this Court is properly called upon to consider it in a future case. I would more narrowly limit the holding in this case to overrule only the "pure law" discussion in *Phillips,* and I would accordingly reverse the court of appeals' determination that the trial court lacked jurisdiction over Heilman's case. Because the majority opinion addresses matters that are beyond the scope of proper review and resolves Heilman's claim on the basis of an unwarranted rehashing of *ex post facto* principles, I respectfully dissent.

---

1. This Court's majority and concurring opinions suggest that the *Phillips* Court erred by deciding that a category-one right was at issue in that case and that *Phillips*'s dissenting opinion was correct in its assessment that, because the amended statute of limitations contained a savings clause, an ordinary lapse of limitations was actually at issue there. *See Phillips v. State,* 362 S.W.3d 606, 619 (Keller, P.J., dissenting). But this Court should not decide cases based upon how a dissenting opinion characterized certain facts. The bottom line is that the majority opinion in *Phillips* decided the case under the theory that a category-one right was at issue because of the new legislation extending the statute of limitations in that case. Even if the majority opinion in *Phillips* was erroneous in its ultimate holding with respect to that matter given the existence of a savings clause, this case does not involve new legislation, a savings clause, or any of the constitutional principles this Court addressed in deciding that a category-one right was implicated in *Phillips.* The limiting principle of *stare decisis* requires that we not overrule precedent based upon the inclusion of dicta when that precedent is procedurally and factually distinguishable.